# 26-172

## In the United States Court of Appeals for the Second Circuit

MAPLEBEAR INC. D/B/A INSTACART,

*Plaintiff-Appellant*,

v.

CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CONSUMER AND WORKER PROTECTION, VILDA VERA MAYUGA, IN HER OFFICIAL CAPACITY,

*Defendants-Appellees.*

On Appeal from the United States District Court for the Southern District of New York, No. 1:25-cv-09979-JGK, Hon. John G. Koeltl, *United States District Judge*

## BRIEF OF AIRLINES FOR AMERICA AS AMICUS CURIAE SUPPORTING PLAINTIFF-APPELLANT AND REVERSAL

Shay Dvoretzky
 *Counsel of Record*
Parker Rider-Longmaid
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

Alisha Q. Nanda
Emily M. Jennings
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
500 Boylston St.
Boston, MA 02116

Raza Rasheed
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
2000 Avenue of the Stars, Ste. 200N
Los Angeles, CA 90067

*Counsel for Amicus Curiae Airlines for America*

# DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29(a)(4)(A), Airlines for America (A4A) states that it has no parent corporation. A4A is a nonprofit corporation organized under the laws of the District of Columbia, with its principal place of business in Washington, DC. A4A is a trade organization that advocates on behalf of its member air carriers on a wide range of issues relevant to the airline industry, including safety, security, the environment, and customer service. A4A's member airlines include Alaska Airlines, Inc; American Airlines, Inc.; Atlas Air, Inc.; Delta Air Lines, Inc.; FedEx Corporation; JetBlue Airways Corp.; Southwest Airlines Co.; United Airlines, Inc.; and UPS Airlines.

**TABLE OF CONTENTS**

**Page**

DISCLOSURE STATEMENT......................................................................i

TABLE OF AUTHORITIES.................................................................. iv

STATEMENT OF INTEREST OF AMICUS CURIAE ........................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................4

ARGUMENT.........................................................................................12

I.      If Instacart's shoppers are motor carriers, then the FAAAA
        preempts New York's shopper laws.......................................................12

        A.      The ADA and the FAAAA preempt state or local laws
                that directly reference, have a connection to, or have a
                significant impact on a motor carrier's prices, routes, or
                services. .......................................................................................13

                1.      State or local laws that reference rates, routes, or
                        services are preempted.........................................................14

                2.      State or local laws with a connection to rates, routes,
                        or services are preempted...................................................16

                3.      State or local laws with a significant impact on
                        Congress's deregulatory efforts are preempted................20

        B.      New York City's shopper laws transgress all three of the
                ADA and FAAAA's preemption tests............................................23

                1.      The City's shopper laws directly reference
                        shoppers' prices..................................................................24

                2.      The City's shopper regulations have an
                        impermissible connection with the shoppers' prices
                        and services.......................................................................25

# TABLE OF CONTENTS
## (continued)

**Page**

3. The City's shopper laws have a significant adverse impact on Congress's deregulatory objectives. .................28

II. The district court's contrary decision violates the FAAAA because it assesses whether the City's shopper regulations have a binding or freezing effect, rather than whether they relate to a motor carriers' prices, routes, or services under Supreme Court precedent. ...............................................................................30

CONCLUSION ....................................................................................34

CERTIFICATE OF COMPLIANCE ...................................................36

CERTIFICATE OF SERVICE ............................................................37

- iii -

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Air Evac EMS, Inc. v. Cheatham*,
910 F.3d 751 (4th Cir. 2018) ................................................................33

*Air Transport Ass'n of America, Inc. v. Cuomo*,
520 F.3d 218 (2d Cir. 2008) (per curiam) ...................................................22

*Air Transport Association of America, Inc. v. Campbell*,
No. 18-cv-10651, 2023 WL 3773743
(D. Mass. June 2, 2023) ......................................................................2

*Botz v. Omni Air International*,
286 F.3d 488 (8th Cir. 2002) ......................................................... 19, 20

*Branche v. Airtran Airways, Inc.*,
342 F.3d 1248 (11th Cir. 2003) ...........................................................33

*California Trucking Ass'n v. Bonta*,
996 F.3d 644 (9th Cir. 2021) ..........................................................6, 30

*Data Manufacturing, Inc. v. United Parcel Service, Inc.*,
557 F.3d 849 (8th Cir. 2009) ................................................... 18, 19, 26

*DiFiore v. American Airlines, Inc.*,
646 F.3d 81 (1st Cir. 2011) .................................................... 17, 18, 26

*Gobeille v. Liberty Mutual Insurance Co.*,
577 U.S. 312 (2016) .................................................................. 7, 9, 12,
................................................................................ 14, 16, 25, 26

*Massachusetts Delivery Ass'n v. Healey*,
821 F.3d 187 (1st Cir. 2016) ..................................... 16, 23, 25, 29, 31

*Montgomery v. Caribe Transportation II, LLC*,
No. 24-1238, 2026 WL 1336188
(U.S. May 14, 2026) .................................................................. 1, 2, 4

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ............................................................... 7, 8, 9,
    ........................................................................................ 10, 11, 12,
    ...................................................................................... 14, 15, 16, 19,
    ................................................................................... 20, 25, 28, 31, 32

*Northwest, Inc. v. Ginsberg*,
    572 U.S. 273 (2014) ................................................ 7, 8, 11, 17, 28, 31

*Rowe v. New Hampshire Motor Transport Ass'n*,
    552 U.S. 364 (2008) ...................................................................... 5, 7,
    ........................................................................................... 8, 10, 12,
    ....................................................................................... 13, 14, 20, 21,
    ...................................................................................... 22, 26, 28, 29, 31, 32

*Schwann v. FedEx Ground Package System, Inc.*,
    813 F.3d 429 (1st Cir. 2016) .............................................. 16, 22, 23,
    ................................................................................... 25, 29, 31, 32, 33

*Watson v. Air Methods Corp.*,
    870 F.3d 812 (8th Cir. 2017) (en banc) ...................................... 19, 33

*Witty v. Delta Air Lines*,
    366 F.3d 380 (5th Cir. 2004) ...................................................... 33

STATUTES, LAWS, AND OTHER AUTHORITIES

Employee Retirement Income Security
    Act (ERISA) of 1974,
    29 U.S.C. § 1001 *et seq.* .......................................................... 14, 15, 16

Federal Aviation Administration Authorization
    Act (FAAAA) of 1994,
    49 U.S.C. § 14501(c) .................................................................. 1, 2,
    .............................................................................................. 3, 4, 5, 6,
    ........................................................................................ 7, 8, 9, 10, 11,
    ....................................................................................... 12, 13, 14, 20, 21,
    ...................................................................................... 22, 28, 29, 30, 31, 32

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

49 U.S.C. § 14501(c)(1) ........................................................... 2, 3, 4, .................................................................................... 5, 6, 8, 10, 11, ........................................................................ 12, 13, 23, 25, 33

Airline Deregulation Act (ADA) of 1978,
49 U.S.C. § 41713(b)(1) ...........................................................1, 2, ........................................................................................... 3, 4, 5, .......................................................................................... 6, 7, 8, 9, .................................................................................. 10, 11, 12, 13, ........................................................................... 14, 15, 16, 17, 19, 20, .................................................................. 23, 24, 28, 30, 31, 32, 34

N.Y.C., N.Y., Law 2025-107, § 1....................................................9, 24

N.Y.C., N.Y., Law 2025-108, § 1....................................................9, 24

N.Y.C., N.Y., Law 2025-113, § 1....................................................9, 24

N.Y.C., N.Y., Law 2025-123, § 1....................................................9, 24

N.Y.C., N.Y., Law 2025-124,
§ 1................................................................................. 6, 23, 25, 26
§ 2.....................................................................................6, 23
§ 3................................................................................... 9, 24, 25

N.Y.C. Dep't of Consumer & Worker Protection, Notice of Adoption (Dec. 26, 2025), https://rules.cityofnewyork.us/ wp-content/uploads/2025/12/ DCWP-NOA-Rules-Relating-to- Contracted-Delivery-Workers.pdf...........................................................27

N.Y.C. Dep't of Consumer & Worker Protection, *Restaurant Delivery App Data: April-June 2024* (2024), https://www.nyc.gov/assets/dca/downloads/ pdf/workers/Restaurant-Delivery- App-Data-Q2-2024.pdf....................................................... 27, 28

## STATEMENT OF INTEREST OF AMICUS CURIAE[*]

Airlines for America (A4A) is the Nation's oldest and largest airline trade association. In recent years, A4A's passenger carrier members and their marketing partners accounted for more than 90% of U.S. airline passenger and cargo traffic. Commercial aviation drives 5% of U.S. GDP and helps support more than 10 million U.S. jobs.

Ensuring the uniformity of the laws and regulations governing interstate aviation through proper application of preemption principles is vitally important to A4A's members and the success of the industry. A4A's members operate under detailed and exclusive federal regulatory regimes that are uniform by design and that thus often preempt the application of state and local law.

A4A routinely files briefs in the Supreme Court and appellate courts to ensure a proper understanding of the laws governing this vital segment of the American economy. For example, A4A recently filed an amicus brief in *Montgomery v. Caribe Transportation II, LLC*, No. 24-1238, 2026 WL 1336188

---

[*] No party's counsel authored or funded any part of this brief; and no person, other than A4A, its members, or its counsel, contributed money that was intended to fund preparing or submitting the brief. The parties gave consent for A4A to file this brief.

(U.S. May 14, 2026), in the context of the Federal Aviation Administration Authorization Act (FAAAA) of 1994, 49 U.S.C. § 14501(c), the same statute at issue here, to correct misrepresentations about the scope of federal preemption accorded to the airline industry under the Airline Deregulation Act (ADA) of 1978, 49 U.S.C. § 41713(b)(1), which served as a model for the FAAAA. A4A is also currently litigating suits around the country to halt application of various state laws that attempt to unlawfully regulate airlines' prices, routes, or services, in violation of the ADA. *See, e.g.*, Complaint, *Air Transport Association of America, Inc. v. Corbin*, No. 25-cv-1945 (W.D. Mich. Dec. 31, 2025); Complaint, *Air Transport Association of America, Inc. v. Blissenbach*, No. 24-cv-4657 (D. Minn. Dec. 30, 2024); Complaint, *Air Transport Association of America, Inc. v. Meyer*, No. 24-cv-4623 (N.D. Ill. June 4, 2024); Complaint, *Air Transport Association of America, Inc. v. Moss*, No. 23-cv-2421 (D. Colo. Sept. 15, 2023). In *Air Transport Association of America, Inc. v. Campbell*, No. 18-cv-10651, 2023 WL 3773743 (D. Mass. June 2, 2023), A4A prevailed following a bench trial, with the court finding Massachusetts' earned sick leave law preempted by the ADA as to airline employees.

This case turns on application of the FAAAA's express preemption provision. As noted, the FAAAA's preemption provision was modeled on a

- 2 -

similarly worded provision in the ADA, which protects the airline industry from burdensome state regulation that could interfere with pro-consumer market forces. The parties in this case have invoked ADA preemption principles in debating whether the FAAAA preempts the City of New York's laws regulating grocery delivery services. The City's arguments are wrong. If accepted, those arguments threaten to upset Congress's longstanding deregulatory framework governing the airline industry by allowing states and localities to regulate airlines, and even to permit private plaintiffs to regulate airline operations by invoking state tort law.

A4A takes no position on whether the shoppers at issue in this case are motor carriers under the FAAAA. If they are, however, then the City's laws are plainly preempted under well-established Supreme Court precedent interpreting the ADA and FAAAA. A4A thus submits this brief to clarify settled FAAAA and ADA preemption principles; respond to the City's mistaken arguments about how FAAAA and ADA preemption operate; and ensure that, however the Court resolves the antecedent question about whether the shoppers are motor carriers, it has a proper understanding of ADA preemption and doesn't rule in a way that threatens to upset the longstanding balance of airline regulation that Congress intended.

- 3 -

A4A took a similar approach before the Supreme Court in *Montgomery*, No. 24-1238, another FAAAA preemption case. The oral argument there addressed A4A's brief and the concern that the Court's approach to the shared statutory language in the FAAAA and ADA could "have some carryover effects in the ADA context." Tr. 46:21-47:1, *Montgomery*, 2026 WL 1336188. The Court ultimately accepted A4A's suggestion to decide the case based on language exclusive to the FAAAA. *Montgomery*, 2026 WL 1336188, at *4 n.2. A4A respectfully submits that the Court should take the same care here.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Instacart operates an online marketplace that connects consumers with independent delivery workers, called shoppers, who purchase goods at local stores and then deliver them directly to consumers. The primary question in this appeal is whether a package of five municipal laws that New York City enacted in 2025 to dictate pay rates, standards, and disclosures for shoppers is preempted by the FAAAA. The answer turns on whether shoppers qualify as "motor carrier[s]" subject to the FAAAA's coverage, *see* 49 U.S.C. § 14501(c). That's because, if shoppers are motor carriers, the Supreme Court's well-established precedents interpreting the FAAAA's and ADA's

- 4 -

similarly worded preemption provisions, 49 U.S.C. §§ 14501(c)(1) and 41713(b)(1), make clear that the City's laws are preempted.

The FAAAA provides that states and municipalities "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier … with respect to the transportation of property." *Id.* § 14501(c)(1). Congress modeled that language on the ADA's preemption provision, which provides that states "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." *Id.* § 41713(b)(1). Courts thus "follow" ADA preemption precedents in interpreting the scope of FAAAA preemption. *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 370 (2008).

The FAAAA analysis here proceeds in two steps. The first is whether shoppers count as "motor carriers" subject to the FAAAA's protections. The second is whether, if shoppers are motor carriers, the City's laws relate to the shoppers' prices, routes, or services, and thus are preempted.

A4A takes no position on the first question, except to explain that the first question is dispositive because the answer to the second is straightforward under Supreme Court precedent. A4A writes to make clear why the

- 5 -

City has no reasonable argument as to the second question, and how the district court's atextual reasoning contravenes binding Supreme Court precedent. Shoppers' "services" are the deliveries they make to customers, and their prices are the compensation they receive for those delivery services. N.Y.C., N.Y., Law 2025-124 §§ 1-2. If shoppers are motor carriers, then the City's laws "relate[] to a price … of any motor carrier … with respect to the transportation of property," 49 U.S.C. § 14501(c)(1), and are preempted, as Supreme Court precedent makes clear, because they effectively dictate when, how much, and for what activities shoppers get paid for their services. So the Court's focus should be on whether shoppers count as motor carriers, because if they do, the City's shopper laws are clearly preempted by the FAAAA.

Citing a line of Ninth Circuit decisions, the district court concluded that no matter whether shoppers are motor carriers, the City's laws can't be preempted because they don't "have a binding or freezing effect" "compel[ling] a result at the level of the motor carrier's relationship with its customers or consumers." SPA013 (quoting *California Trucking Ass'n v. Bonta*, 996 F.3d 644, 656-58 (9th Cir. 2021)). That was error. Nothing in the ADA or FAAAA requires laws to bind carriers to particular customer interactions to

trigger preemption, and the Ninth Circuit's contrary decisions contradict multiple Supreme Court precedents. Under the FAAAA's text and Supreme Court precedent, rather than the Ninth Circuit's erroneous attempt to "narrow[]" the FAAAA, *see* SPA012, there is little doubt that the City's laws relate to shoppers' prices and services and are thus preempted if the shoppers are motor carriers.

**1.**     Supreme Court precedent holds that there are three ways a law can impermissibly "relate to" a protected carriers' prices, routes, or services—all three ways triggering ADA and FAAAA preemption.

*First*, a law may directly "reference" the carrier's prices, routes, or services. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). Laws "reference" protected activity if they "act[] immediately and exclusively upon" that activity or its "existence … is essential to the law's operation." *Gobeille v. Liberty Mutual Insurance Co.*, 577 U.S. 312, 319-20 (2016).

*Second*, a law may "hav[e] a connection" to the carrier's prices, routes, or services, even if that connection is "indirect." *Rowe*, 552 U.S. at 370 (emphasis omitted). For example, claims brought under laws of general application have an impermissible connection, and are thus preempted,

- 7 -

when they interfere with how the carrier selects or provides its prices, routes, or services. *See Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284-85 (2014).

*Third*, a law can have "a 'significant' and adverse 'impact'" on the regulatory objectives Congress sought to achieve in the ADA or FAAAA. *Rowe*, 552 U.S. at 371-72. That impermissible significant impact occurs if allowing the claim would permit state law, rather than "competitive market forces," to impact "to a significant degree" the rates, routes, or services that the carrier "will provide." *Id.* at 372. As a result, for example, claims that have a "significant impact" on a carrier's prices, routes, or services will be preempted. *Morales*, 504 U.S. at 390.

These multiple different paths to preemption underscore the ADA's and FAAAA's "broad pre-emptive purpose." *Id.* at 383. Congress made the ADA's and FAAAA's preemption provisions "deliberately expansive" to get states out of the business of micromanaging carriers' business activities. *Id.* at 384. The different tests are simply different ways of getting to the same place: Ultimately, the ADA and FAAAA preempt any claims related to a carrier's prices, routes, or services as long as the connection isn't "tenuous, remote, or peripheral." *Id.* at 390; *Rowe*, 552 U.S. at 371.

- 8 -

**2.** If shoppers are motor carriers, then the City's laws satisfy all three preemption tests. The reference test is the most straightforward. All five of New York's shopper laws directly reference the shoppers' "price[s]"—the compensation they receive for their delivery services. Two of the laws require Instacart to offer consumers the chance to add a tip to a shopper's standard price. N.Y.C., N.Y., Law 2025-107 § 1; N.Y.C., N.Y., Law 2025-108 § 1. One specifies when and how frequently the shoppers' service price must be paid. N.Y.C., N.Y., Law 2025-113 § 1. Another requires Instacart to keep detailed records about what price each shopper was paid. N.Y.C., N.Y., Law 2025-123 § 1. And one dictates a minimum price for shoppers, and what payments count towards that minimum price. Law 2025-124 § 3. The shoppers' price "is essential to the law[s'] operation," *Gobeille*, 577 U.S. at 319-20, which means the laws relate to that price and are preempted, *Morales*, 504 U.S. at 384.

Although the Court doesn't need to analyze the other two tests, they produce the same result. Each of the City's shopper laws has a connection with shoppers' prices and services because the laws seek to dictate what shoppers charge for their deliveries and restrict their option to charge less than the City's preferred floor. *See Gobeille*, 577 U.S. at 320. And for similar

- 9 -

reasons, the shopper laws each have a significant impact on the shoppers' prices and services. Indeed, that's the whole point of the laws. Congress enacted the ADA and FAAAA to promote "maximum reliance on competitive market forces" and to ensure "that the States would not undo federal deregulation with regulation of their own." *Morales*, 504 U.S. at 378; *Rowe*, 552 U.S. at 367-68. By directing when, how much, and for what activities shoppers can be paid, the City's laws represent the very antithesis of the market forces Congress sought to promote. *See Rowe*, 552 U.S. at 370-71.

**3.**     The district court erred in adopting the Ninth Circuit's "binds to" test. The Supreme Court has rejected the notion that the ADA and FAAAA "only pre-empt[] the States from actually prescribing rates, routes, or services." *Morales*, 504 U.S. at 385. The Court's preemption precedent confirms that there is no specialized or more demanding test that triggers preemption only if a state or local law binds carriers to particular prices, routes, or services at the point of sale to consumers. *See, e.g., Rowe*, 552 U.S. at 375-76; *Morales*, 504 U.S. at 386. And the "binds to" test contradicts the FAAAA's plain text, which preempts *any* "law … related to a price, route, or service of any motor carrier … with respect to the transportation of

- 10 -

property," 49 U.S.C. § 14501(c)(1)—not just laws that require carriers to interact with their end-customers in a particular way.

What's more, adopting the "binds to" test would make it all too easy for states and municipalities to evade the ADA and FAAAA and thwart Congress's deregulatory agenda. Under the Ninth Circuit's outlier approach, states could regulate any aspect of a carrier's business—no matter how significant the impact on prices, routes, or services—as long as the regulation targets the carrier's internal operations rather than its interactions with its customers. But Congress didn't intend to allow unlimited state regulation of the transportation industry as long as that regulation is cleverly designed, and nothing in the statutory text supports that approach. "What is important … is the effect of a state law, regulation, or provision, not its form." *Ginsberg*, 572 U.S. at 283. The Ninth Circuit's approach "create[s] an utterly irrational loophole," because "there is little reason why state impairment of the federal scheme should be deemed acceptable so long as it is effected by the particularized application of a general statute." *Morales*, 504 U.S. at 386.

Ultimately, if shoppers are motor carriers, the FAAAA preempts the City's shopper laws. It's not a close call. A4A takes no position on whether shoppers qualify as motor carriers subject to the FAAAA, because the ADA

- 11 -

doesn't cover motor carriers and that question thus has no impact on A4A's members. But if the Court concludes that shoppers are motor carriers, it should reject the Ninth Circuit's "binds to" test, apply the Supreme Court's ADA and FAAAA precedents, and hold that the City's laws relate to shoppers' prices and services and are thus preempted.

## ARGUMENT

### I.    If Instacart's shoppers are motor carriers, then the FAAAA preempts New York's shopper laws.

As noted, the FAAAA's preemption provision encompasses any state "law, regulation, or other provision having the force and effect of law related to a price, route, or service of … any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The Supreme Court's precedents have long established that this provision reaches as least claims that directly "reference" a broker's prices, routes, or services, *see Morales*, 504 U.S. at 384; *Rowe*, 552 U.S. at 370, meaning that the covered activities are "essential to the law's operation," *Gobeille*, 577 U.S. at 320. It also reaches laws that have an impermissible connection with rates routes or services, *see id.*, or a substantial negative impact on Congress's deregulatory objectives, *see Rowe*, 552 U.S. at 371.

- 12 -

If Instacart shoppers are motor carriers, meaning the FAAAA's preemption provision applies, then the City's laws satisfy all three tests. The laws each directly reference the shoppers' prices by governing when, how much, and for what the shoppers charge Instacart for their services. The laws have a connection to the shoppers' prices and services by depriving them of pricing flexibility. And the laws have a substantial adverse effect on Congress's deregulatory objectives by replacing competitive market forces with the City's judgment about how much shoppers should charge and thus, ultimately, how many shoppers can enter the market.

### A. The ADA and the FAAAA preempt state or local laws that directly reference, have a connection to, or have a significant impact on a motor carrier's prices, routes, or services.

The FAAAA preempts any state or local "law, regulation, or other provision having the force and effect of law related to a price, route, or service of … any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). Congress modeled the FAAAA's preemption provision after a similar provision in the ADA, *id.* § 41713(b)(1), and the two provisions are thus interpreted consistently with one another. *See Rowe*, 552 U.S. at 370.

- 13 -

The "key phrase" in both provisions "is 'relating to.'" *Morales*, 504 U.S. at 383. That phrase is "deliberately expansive" and "express[es] a broad preemptive purpose." *Id.* at 383-84. Supreme Court precedent makes clear that a state or local law is preempted by the ADA and FAAAA if it references, has a connection to, or has a significant impact on a carrier's prices, routes, or services.

### 1. State or local laws that reference rates, routes, or services are preempted.

To start, the ADA and FAAAA preempt state or local laws that have a "reference to" a carrier's "rates, routes, or services." *Id.* at 384; *Rowe*, 552 U.S. at 370. As the Court has explained "in addressing the similarly worded preemption provision of the Employee Retirement Income Security Act of 1974 (ERISA)," *Morales*, 504 U.S. at 383, laws directly "reference" protected activity if they "act[] immediately and exclusively upon" that activity or its "existence … is essential to the law's operation," *Gobeille*, 577 U.S. at 319-20.

For example, in *Morales*, seven state attorneys general accused an airline of violating their states' generally applicable laws prohibiting "deceptive advertising and trade practices" by failing to adhere to guidelines explaining that airlines should include "all taxes and surcharges" in any

"advertised fare." *Morales*, 504 U.S. at 379-80, 387. The states threatened to sue to enforce their guidelines, which contained various requirements about how fares must be disclosed. *Id.* at 380, 387-88. The Court held that the states' contemplated deceptive advertising claims "quite obviously" related to "airline rates" because they bore a direct "'reference to' airfares": The guidelines the states wished to enforce through their consumer protection laws would directly regulate how fares must be disclosed. *Id.* at 387-88.

That was true even though the consumer protection laws at issue were generally applicable and the guidelines the state sought to enforce didn't themselves "purport to 'create any new laws or regulations.'" *Id.* at 379. The Court rejected "the notion that only state laws specifically addressed to the airline industry are pre-empted, whereas the ADA imposes no constraints on laws of general applicability." *Id.* at 386. "Besides creating an utterly irrational loophole (there is little reason why state impairment of the federal scheme should be deemed acceptable so long as it is effected by the particularized application of a general statute)," the Court explained, "this notion similarly ignores the sweep of the 'relating to' language." *Id.* That isn't the way preemption works under the similar express preemption provision in

- 15 -

ERISA, the Court explained, and it's not the way preemption works under the ADA, either. *Id.*

Courts of appeals have found state laws preempted as applied to carriers where they directly reference carriers' rates, routes, or services. For example, the First Circuit has twice held that a Massachusetts law governing whether workers are employees or independent contractors is preempted as applied to motor carriers because the second prong of the law expressly requires consideration of the nature of the employer's services. *See Schwann v. FedEx Ground Package System, Inc.*, 813 F.3d 429, 437-38 (1st Cir. 2016); *Massachusetts Delivery Ass'n v. Healey*, 821 F.3d 187, 192 (1st Cir. 2016).

### 2. State or local laws with a connection to rates, routes, or services are preempted.

State or local laws are also preempted if they have "a connection with" a carrier's "rates, routes, or services." *Morales*, 504 U.S. at 384. A law has "an impermissible connection" with prices, routes, or services if (1) it seeks to "govern[]" or "interfere with" the carrier's prices, routes, or services; or (2) "'acute, albeit indirect, economic effects' of the state law" would "force" the carrier "to adopt a certain scheme … or effectively restrict its" competitive "choice[s]." *Gobeille*, 577 U.S. at 320.

For example, in *Ginsberg*, the plaintiff asserted that an airline breached the state common-law implied covenant of good faith and fair dealing by terminating his access to the airline's frequent flyer program, and sought re-instatement. 572 U.S. at 284. The Court first held that the common-law claim was a "provision having the force and effect of law" under the ADA's express preemption provision. *Id.* at 281-84 (quoting 49 U.S.C. § 41713(b)(1)). The Court then held that the plaintiff's claim "clearly ha[d] … a connection … to the airline's 'rates' because the [frequent flyer] program award[ed] mileage credits that c[ould] be redeemed for tickets and upgrades." *Id.* The claim was also "clearly … connected to" the airline's "services" because the frequent flyer program allowed participants "access to flights and to higher service categories." *Id.* Because the point of the claim was to force the airline to charge the plaintiff prices and give him services the airline wished to withhold, the claim was preempted by the ADA. *Id.* at 285.

The courts of appeals have applied the connection test to find state-law claims preempted. In *DiFiore v. American Airlines, Inc.*, 646 F.3d 81, 87-90 (1st Cir. 2011), for example, the First Circuit held that the ADA preempted application of a Massachusetts tips law to airline skycaps. The Massachusetts law generally prohibited employers from seeking to retain fees that

- 17 -

customers would reasonably expect to go to service employees as tips. *Id.* at 84. American Airlines charged a fee of $2 per bag for the use of skycaps— curbside baggage handlers. *Id.* at 83-84. The skycaps sued, claiming that they were entitled to the fees under the Massachusetts tips law. *Id.* The First Circuit found the law preempted as applied to airlines because it "has a *direct connection* to air carrier prices and services and can fairly be said to regulate both." *Id.* at 87. The Massachusetts law "directly regulates how an airline service is performed and how its price is displayed to customers," and avoiding the law "would require changes in the way the service is provided or advertised." *Id.* at 88.

Similarly, in *Data Manufacturing, Inc. v. United Parcel Service, Inc.*, 557 F.3d 849, 852 (8th Cir. 2009), the Eighth Circuit held preempted several state-law claims challenging UPS's imposition of a $10 re-billing charge. The court explained that "the $10 charge is part of UPS's 'operations' and falls into both the price and service categories" as a "necessary component of its business operations." *Id.* Noting that "[t]he Supreme Court has broadly interpreted the phrase 'relating to' as encompassing all state laws having any connection with or reference to the carrier's rates, routes or services," the Eighth Circuit explained that the $10 charge was "part of [UPS's] pricing and

- 18 -

services" and the plaintiffs' "claims attack the validity of the $10 re-billing charge, which relates to UPS's price or services." *Id.*

As another Eighth Circuit decision makes clear, the "forbidden connection" between state or local law and airline prices, routes, or services can be indirect. *See Botz v. Omni Air International*, 286 F.3d 488, 495 (8th Cir. 2002), *overruled on other grounds by Watson v. Air Methods Corp.*, 870 F.3d 812 (8th Cir. 2017) (en banc). In *Botz*, the court held that the ADA preempted a flight attendant's claim under a generally applicable Minnesota whistleblower law that she was wrongfully discharged for refusing to fly a trip she believed violated federal regulations. *Id.* at 490. Looking to "the potentially disruptive effect of a crewmember refusing a work assignment," including the possibility of canceling flights, *Watson*, 870 F.3d at 816, the court reasoned that "[t]he Minnesota whistleblower statute's connection with air-carrier services is quite similar to the connection discussed in *Morales* between air-carrier prices and the uniform state advertising guidelines that were there under consideration." *Botz*, 286 F.3d at 495. The Minnesota statute had "a forbidden connection with both air-carrier routes and services," *id.* at 497, because, like the statute in *Morales*, it "relate[d] to the pre-empted domain of air-carrier prices, routes, and services indirectly," *id.* at 495. The Minnesota law "affects

- 19 -

air-carrier service by authorizing a flight attendant to refuse assignments and protecting her when she does," the court reasoned, making it a state attempt "to impose [its] own public policies or regulatory theories on an air carrier's operations, an imposition that Congress intended the ADA to pre-empt." *Id.*

### 3. State or local laws with a significant impact on Congress's deregulatory efforts are preempted.

Finally, the ADA and FAAAA also preempt laws that would have a significant adverse impact on Congress's efforts to deregulate the Nation's transportation industries. Congress enacted the ADA and FAAAA to promote "maximum reliance on competitive market forces" and to "ensure that the States would not undo federal deregulation with regulation of their own." *Morales*, 504 U.S. at 378; *Rowe*, 552 U.S. at 367-68. The ADA and FAAAA thus preempt more than just those state or local laws that reference or have a connection with airline prices, routes, or services. They also preempt "at least" any state or local law or claim that would "have a 'significant impact' related to Congress' deregulatory and pre-emption-related objectives" by imposing state or local regulation on federally regulated

- 20 -

conduct, "even if a state law's effect on rates, routes, or services 'is only indirect.'" *Rowe*, 552 U.S. at 370-71.

For example, in *Rowe*, trade associations for air and motor carriers challenged a Maine statute that prohibited "licensed tobacco retailers" from "employ[ing] a 'delivery service' unless that service follow[ed] particular delivery procedures." *Id.* at 371. The Court held that the statute had a "'significant' and adverse 'impact' in respect to the [FAAAA's] ability to achieve its pre-emption-related objectives" and was thus preempted. *Id.* at 371-72. The Court explained that the Maine law "require[d] carriers to offer a system of services that the market d[id] not [then] provide (and which the carriers … prefer[red] not to offer)," and also "fr[oze] into place services that carriers might prefer to discontinue in the future." *Id.* at 372. "The Maine law thereby produce[d] the very effect that the federal law sought to avoid, namely, a State's direct substitution of its own governmental commands for 'competitive market forces' in determining (to a significant degree) the services that motor carriers will provide." *Id.*

The courts of appeals have similarly held that state statutes that would effectively substitute state law principles for market forces in determining a carrier's prices, routes, or services are preempted under the significant

- 21 -

impact test. For example, in *Air Transport Ass'n of America, Inc. v. Cuomo*, 520 F.3d 218, 220 (2d Cir. 2008) (per curiam), A4A (under its former name) challenged a New York law requiring airlines to provide certain services to passengers who had to wait more than three hours on the tarmac prior to takeoff. Applying *Rowe*, this Court held that the New York statute was preempted because "[i]t substitute[d] New York's commands for competitive market forces" in determining what services should be available during delays. *Id.* at 223-24.

Similarly, in *Schwann*, the First Circuit held that the FAAAA preempted application of a Massachusetts statute to FedEx delivery drivers based on its "significant impact" on Congress's deregulatory objectives. 813 F.3d at 438-39. The delivery drivers, who handled initial pickup and the last legs of certain deliveries, argued that FedEx should have paid them as employees—rather than independent contractors—under a Massachusetts law classifying contractors as employees if they were in the same line of business as the hirer. *Id.* at 432. The court reasoned that applying Massachusetts' employee-classification law to FedEx would "have a significant impact" on Congress's deregulatory objectives because it would effectively deprive FedEx of the choice of "providing for first-and-last mile pick-up and delivery

- 22 -

services through an independent person who bears the economic risk associated with any inefficiencies in performance," and thus "a court, rather than the market participant, would ultimately determine what services that company provides and how it chooses to provide them." *Id.* at 438-39. The First Circuit reaffirmed its decision in *Schwann* in *Massachusetts Delivery Ass'n*, reasoning that the Massachusetts law "would logically be expected to have a significant impact on [carriers'] routes" by depriving carriers of their "choice of method of providing for delivery services and incentivizing the persons providing those services." 821 F.3d at 193.

### B.     New York City's shopper laws transgress all three of the ADA and FAAAA's preemption tests.

If Instacart's shoppers are indeed motor carriers, then the FAAAA preempts New York City's shopper laws. Instacart's shoppers are independent contractors. Their "services" are "transport[ing], carry[ing], or otherwise enabl[ing] the conveyance of groceries and similar goods … from businesses or other locations directly to customers in New York City." Law 2025-124 § 1. Their prices are the "compensation" they receive "in exchange for" "deliver[ing] goods from a business to a customer." *Id.* § 2. The City's laws each directly reference, have an impermissible connection with, or have a

- 23 -

significant impact on the shoppers' prices and services "with respect to the transportation of property"—*i.e.*, deliveries of groceries and other store-bought goods. 49 U.S.C. § 14501(c)(1). The laws are thus preempted.

### 1. The City's shopper laws directly reference shoppers' prices.

Start with the reference test, which shows in the most straightforward way that the City's laws are "related to a price … of [a] motor carrier." *Id.* The City's five shopper laws each directly reference the shoppers' prices. For example, Local Laws 2025-107 and 2025-108 reference shoppers' prices by requiring Instacart to offer consumers "an opportunity to pay" the shoppers "a gratuity that is at least 10 percent" of the total price of the goods the shopper delivered. Law 2025-107 § 1; Law 2025-108 § 1. Similarly, Local Law 2025-113 references shoppers' prices by requiring Instacart to use a weekly pay period for the shoppers' delivery services, pay the shoppers "[n]o later than 7 calendar days after" the end of each "pay period," and omit gratuities in calculating the amounts due to shoppers for each pay period. Law 2025-113 § 1. Local Law 2025-123 references prices by requiring Instacart to keep records of its payments to shoppers and provide those records to City authorities upon request. Law 2025-123 § 1. And Local Law 2025-124 references

- 24 -

shoppers' prices by requiring Instacart to "make payments to" shoppers "that meet or exceed the minimum pay requirements for food delivery workers" set out in the City's regulations. Law 2025-124 § 3.

In each provision, the shoppers' prices are "essential to the law's operation." *Gobeille*, 577 U.S. at 320. And just as the Massachusetts law in *Schwann* (813 F.3d at 437-38) and *Massachusetts Delivery Ass'n* (821 F.3d at 192) expressly referenced services, the City's laws expressly reference prices. Indeed, the City enacted these laws precisely because it thought the price for the shoppers' services was too low in light of shoppers' operational costs and the City wanted to mandate higher prices for their services. Law 2025-124 § 1 (legislative findings). Accordingly, if shoppers are motor carriers, Local Laws 2025-107, -108, -113, and -124 reference "a price … of any motor carrier … with respect to the transportation of property," 49 U.S.C. § 14501(c)(1), and are thus preempted. *Morales*, 504 U.S. at 387-88.

### 2. The City's shopper regulations have an impermissible connection with the shoppers' prices and services.

The reference test analysis discussed above is the most straightforward way to determine that the City's laws relate to prices, and the Court doesn't

- 25 -

need to separately evaluate the other two tests. But the City's shopper laws also relate to prices and services under the connection test, too.

*First*, the City's laws each seek to "govern" or "interfere with" the shoppers' prices. *Gobeille*, 577 U.S. at 320. The City enacted this package of local laws precisely because it wanted to "substitut[e] … its own governmental commands for 'competitive market forces' in determining" the prices shoppers charge for their services. *Rowe*, 552 U.S. at 372; Law 2025-124 § 1 (legislative findings). Carrying out that purpose, the five laws collectively mandate when and how much shoppers must be paid for making deliveries. *Supra* pp. 24-25. It is hard to imagine a more direct connection between a law and a potential carrier's prices than that. And it is not possible to distinguish the laws' connection to shoppers' prices here from the connection between the Massachusetts' tips law and airline prices and services in *DiFiore*, 646 F.3d at 87-90, or the claims based on UPS's $10 re-billing charge in *Data Manufacturing*, 557 F.3d at 852.

*Second*, the "'acute, albeit indirect, economic effects' of the [City's] law[s]" would "force" shoppers "to adopt a certain scheme … or effectively restrict" their competitive "choice[s]." *Gobeille*, 577 U.S. at 320. Rational shoppers may prefer to keep the price of their services low by eschewing

- 26 -

minimum pay standards and gratuities to ensure robust demand for services like Instacart, and thus plentiful (and flexible) opportunities for shoppers to work. That may sound like a rationalization for a pro-employer, anti-worker policy, but it's not. When the City enacted similar laws establishing minimum prices for food delivery services, tens of thousands of restaurant delivery jobs vanished in just the first year. N.Y.C. Dep't of Consumer & Worker Protection, *Restaurant Delivery App Data: April-June 2024* at 3 (2024), https://www.nyc.gov/assets/dca/downloads/pdf/workers/Restaurant-Delivery-App-Data-Q2-2024.pdf. As Instacart recounts in its briefing, "[o]rder-volume growth slowed, hours worked plummeted, consumer and restaurant fees when up, and tips went down." Instacart Motion for an Injunction Pending Appeal 6, Doc. 20.1. A reasonable shopper could prefer plentiful opportunities to make deliveries at lower prices rather than scarce opportunities to make deliveries at higher ones.

The City's shopper laws destroy that competitive choice by requiring shoppers to work using one of two City-approved formulas that both dictate the minimum price for time spent on deliveries, and require shoppers to be paid for time they spend logged into the Instacart app but not working. *See* N.Y.C. Dep't of Consumer & Worker Protection, *Notice of Adoption* 2 (Dec. 26,

2025), https://rules.cityofnewyork.us/wp-content/uploads/2025/12/ DCWP-NOA-Rules-Relating-to-Contracted-Delivery-Workers.pdf. That requirement gives the shopper laws an impermissible connection with the shoppers' prices and services. *See Ginsberg*, 572 U.S. at 285.

### 3. The City's shopper laws have a significant adverse impact on Congress's deregulatory objectives.

Finally, the City's shopper laws flunk the significant impact test because they "have a 'significant impact' related to Congress' deregulatory and pre-emption-related objectives." *Rowe*, 552 U.S. at 370-71. Again, Congress enacted the ADA and FAAAA to promote "maximum reliance on competitive market forces" and to ensure "that the States would not undo federal deregulation with regulation of their own." *Morales*, 504 U.S. at 378; *Rowe*, 552 U.S. at 367-68. The City's local laws are the antithesis of the market forces Congress sought to promote. Indeed, the shopper laws dictate the minimum price shoppers must offer for their delivery services and prohibit downward price competition. *Supra* pp. 24-25. They also dictate which time shoppers must charge for, mandating that shoppers get paid for on-call time logged into Instacart's app. *Supra* pp. 27-28. That latter requirement will effectively force Instacart to restrict when shoppers can be logged into the app, and thus

- 28 -

restrict when shoppers can provide their services. If shoppers are motor carriers, then there can be no doubt that the City's laws have a significant impact on their prices and are thus preempted. *See Rowe*, 552 U.S. at 370-71. As the First Circuit has explained, a law determining "what services [a carrier] provides and how it chooses to provide them" has a significant impact on the carrier's services and is preempted, *Schwann*, 813 F.3d at 438, because it "deprive[s the carrier] of its choice of method of providing for delivery services and incentivizing the persons providing those services," *Massachusetts Delivery Ass'n*, 821 F.3d at 193.

\* \* \*

If Instacart shoppers are motor carriers, then the FAAAA preempts the City's shopper laws as applied to Instacart shoppers. At a minimum, the laws each reference the shoppers' prices—*i.e.*, the compensation they receive from Instacart and customers for their delivery services. That alone suffices to show FAAAA preemption. But the laws also have an impermissible connection with and significant impact on shoppers' prices and services by dictating when and how much shoppers must be paid, even if doing so eliminates competition and contracts the market for the shoppers' services. The

- 29 -

City's laws represent exactly the sort of intrusive regulation Congress sought to preempt in the FAAAA.

**II.    The district court's contrary decision violates the FAAAA because it assesses whether the City's shopper regulations have a binding or freezing effect, rather than whether they relate to a motor carriers' prices, routes, or services under Supreme Court precedent.**

Rather than apply the straightforward analysis explained above, the district court cited an outlier line of Ninth Circuit decisions that "construe the FAAAA narrowly" and concluded that the City's shopper laws can't relate to shoppers' prices or services because they don't "have a binding or freezing effect" by "compel[ling] a result at the level of the motor carrier's relationship with its customers or consumers." SPA012 (quoting *Bonta*, 996 F.3d at 656-58; alterations adopted). The court thought that since the City's laws regulate the shoppers' relationship with Instacart rather than their relationship with their end customers, the laws could not be preempted. *Id.*

That was error. The Ninth Circuit's rule that the ADA and FAAAA do not preempt laws unless they bind a carrier to specific prices, routes, or services with respect to end customers contravenes the Supreme Court's decisions interpreting the ADA's and FAAAA's express preemption provisions and finds no support in the plain text of those provisions.

- 30 -

To start, the Supreme Court has rejected the notion that the ADA and FAAAA "only pre-empt[] the States from actually prescribing rates, routes, or services." *Morales*, 504 U.S. at 385. Indeed, in *Ginsberg*, the Court reversed the Ninth Circuit's holding that "the prerequisite for [ADA] preemption" is that a state law "force[s] the Airlines to adopt or change their prices, routes or services." 572 U.S. at 279. And none of the state laws that the Court found preempted in *Rowe*, *Morales*, or *Ginsberg* required carriers to pick any particular rates, routes, or services. *See Rowe*, 552 U.S. at 371; *Ginsberg*, 572 U.S. at 279; *Morales*, 504 U.S. at 385. The Court still found those laws preempted because of their references and connections to, and significant impacts on, prices, routes, or services. Thus, neither the ADA nor the FAAAA requires a law to "bind" the carrier to anything to trigger preemption, and the district court was wrong to conclude otherwise.

Moreover, Supreme Court and circuit precedents confirm that preemption isn't limited to laws that bind carriers at the point they interface with consumers, and that there is no exception for laws that regulate a company's relationships with its employees or contractors, like minimum labor standards. Time and again, the Supreme Court has held that laws may be preempted even if they have only an "indirect" effect on the prices and

services presented to consumers. *See, e.g.*, *Rowe*, 552 U.S. at 375-76; *Morales*, 504 U.S. at 386. And courts have applied FAAAA preemption to laws that had an indirect effect on prices, routes, or services by targeting a defendant's workers. *See Schwann*, 813 F.3d at 437-38; *Massachusetts Delivery Ass'n*, 821 F.3d at 192. The Ninth Circuit's rule that a law must directly bind carriers at the point of their interaction with customers to trigger ADA and FAAAA preemption directly contradicts those decisions.

The Ninth Circuit's test also cannot be squared with the ADA's and FAAAA's text. Interpreting the ADA and FAAAA to preempt only state or local laws that "actually prescrib[e] rates, routes, or services" at the customer level would "read[] the words 'relating to' out of the statute." *Morales*, 504 U.S. at 385. "Had the statute been designed to pre-empt state law in such a limited fashion, it would have forbidden the States to '*regulate* rates, routes, and services.'" *Id.* But that is not what Congress wrote. In fact, when crafting the ADA, Congress rejected a bill that would have substituted "determining" for "relating to." *Id.* at 386 n.2.

Given that the Ninth Circuit's "binds to" test contravenes Supreme Court precedent, it's unsurprising that no other court of appeals has adopted it. Other courts of appeals have had little trouble applying the three tests

above. The First Circuit, for example, found FAAAA preemption when a state law "would … logically be expected to have a significant impact on the actual routes" of the carrier. *Schwann*, 813 F.3d at 439. The Fifth Circuit, similarly, held that the ADA preempted a negligence claim regarding seat layout because it would have a "'forbidden significant effect' on [airline] prices" since the result of the claim, "requiring more leg room," "would necessarily reduce the number of seats on the aircraft." *Witty v. Delta Air Lines*, 366 F.3d 380, 383 (5th Cir. 2004). Many other circuits have taken the same approach. *See, e.g.*, *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 767 (4th Cir. 2018) ("It is enough that the state law at issue has a 'forbidden significant effect' on prices, even without referencing them directly."); *Watson*, 870 F.3d at 818 (8th Cir.) (preemption turns on whether challenged claims "significantly impact the contractual service relationship between the air carrier and its customers"); *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1255 (11th Cir. 2003) (preemption turns on whether law "has a sufficient—i.e., significant—impact on … services"). This Court should do the same.

## CONCLUSION

A4A does not address whether Instacart shoppers are motor carriers subject to 49 U.S.C. § 14501(c)(1) because that question isn't relevant to the ADA's preemptive sweep. But if the Court holds that Instacart shoppers are motor carriers, it should also hold that the City's shopper laws relate to shoppers' prices and services because they directly reference shoppers' prices; have an impermissible connection with shoppers' prices and services; and have a significant adverse impact on Congress's deregulatory objectives.

Dated: May 15, 2026

Respectfully submitted,

*/s/ Shay Dvoretzky*

Shay Dvoretzky
  *Counsel of Record*
Parker Rider-Longmaid
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

Alisha Q. Nanda
Emily M. Jennings
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston St.
Boston, MA 02116

Raza Rasheed
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
2000 Avenue of the Stars, Ste. 200N
Los Angeles, CA 90067

*Counsel for Amicus Curiae Airlines for America*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and Local Rule 29.1(c) because, as calculated by Microsoft Word, it contains 6,994 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). I also certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.

Dated: May 15, 2026           Respectfully submitted,

*/s/ Shay Dvoretzky*
Shay Dvoretzky
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Amicus Curiae*
 *Airlines for America*

- 36 -

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

Dated: May 15, 2026          Respectfully submitted,

*/s/ Shay Dvoretzky*
Shay Dvoretzky
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Amicus Curiae*
 *Airlines for America*